FILED
APR 26 2011
CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

LISA K. STURTEVANT,

    Debtor.
_____/

Case No. 6:09-bk-08565-ABB
Chapter 7

LISA K. STURTEVANT,

    Plaintiff,

v.

EDUCATIONAL CREDIT
MANAGEMENT CORP.,

    Defendant.
_____/

Adv. Pro. No. 6:09-ap-00909-ABB

## MEMORANDUM OPINION

This matter came before the Court on the Amended Complaint to Determine Dischargeability of Student Loan (Doc. No. 5) filed by pro se Debtor/Plaintiff Lisa K. Sturtevant ("Debtor") against Defendant Education Credit Management Corporation ("ECMC") and the Debtor's Motion to Appear Telephonically (Doc. No. 38) requesting she be allowed to appear at the final evidentiary hearing by telephone. Debtor seeks discharge of over $33,000.00 in student loan debt.

The Amended Complaint identifies no Bankruptcy code or other statutory provision. Based on the pleadings, argument and evidence, this is a 11 U.S.C. Section 523(a)(8) dischargeability action. Judgment is due to be entered in favor of Defendant ECMC pursuant to 11 U.S.C. Section 523(a)(8) for the reasons set forth herein. The

Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing argument, and being otherwise fully advised in the premises.

## PROCEDURAL HISTORY

Status conferences were held telephonically on March 9, 2010, May 4, 2010, July 22, 2010, and October 5, 2010 at which Debtor and counsel for ECMC appeared. The Court directed the parties to file statements of factual matters and legal propositions to assist the Court in determining whether the trial could be conducted telephonically.

The parties filed briefs pursuant to the Court's directive (Doc. Nos. 45, 49, 53, 54). The Court, based upon the parties' briefs, prepared a chart summarizing the parties' factual assertions and identifying the uncontested facts. The Court attached the fact chart to its Order of March 9, 2011 (Doc. No. 60) which directed the parties to file any objections or proposed additions to the chart contents on or before March 23, 2011 and set a hearing for March 30, 2011. Counsel for ECMC filed a Response to the March 9, 2011 Order (Doc. No. 62), proposing minor changes and additions that did not necessitate revision of the fact chart.

A hearing was held telephonically on March 30, 2011, at which Debtor and counsel for ECMC appeared. The parties agreed to treat the March 30, 2011 telephonic hearing as a final evidentiary hearing. Debtor agreed the Court's fact chart was accurate. Counsel for ECMC did not propose any changes to the chart other than those he had already proposed in the written Response (Doc. No. 62). No additional evidence was admitted. The Court found the matter ripe for adjudication and took it under advisement.

## **FINDINGS OF FACT**

Debtor graduated in May 2000 from the University of North Colorado with a degree in sociology. She financed her education through student loans now owned by ECMC. Debtor's student loan debt is approximately $33,000 which she seeks to discharge on the ground repayment would impose an undue hardship upon her and her dependents.

Debtor and her husband Rick Sturtevant bought, renovated and sold homes as a business. She obtained her real estate agent's license in 2007, while the Sturtevant family lived in Cocoa, Florida. The real estate business was not successful, and Debtor filed individually for Chapter 7 bankruptcy in the Middle District of Florida in June 2009. She, her husband, and her son relocated to Pennsylvania for her husband's job in July 2009.

Debtor has researched and applied for several jobs since moving to Pennsylvania but has not succeeded in becoming employed. She does not have a long term physical or mental disability that prevents her from working. Neither does she provide care for a person with a physical or mental disability.[1] Debtor contends she is unemployed because: (1) there are no open positions in her area for which she is qualified; (2) she does not have a vehicle to drive to work and there is no public transportation where she lives; and (3) her eleven-year-old son attends online public school and she needs to be home with him during the day. She also claims she is not qualified for a job that would pay her enough to purchase, insure, and maintain a vehicle to drive to work or to pay for childcare for her son. It is likely the Sturtevants will continue to live in rural areas with

---

[1] Debtor believes she will have to provide in-home care for her elderly mother in the future; she does not do so at this time.

3

limited job opportunities if Rick Sturtevant maintains his current employment,[2] working for the United States Department of Agriculture in rural development.

Rick Sturtevant's gross annual salary is $36,070.00; his take home pay is $2,500.00 per month. The Sturtevant household has $242.83 per month more income than documented expenses; the surplus is $646.40 per month, accounting for pro rata tax refund. One of the Sturtevants' documented expenses is a monthly payment of $127.17 on Rick Sturtevant's private student loan debt. Rick Sturtevant also owes $140,000 in student loan debt to ECMC; his wages are subject to federal wage garnishment pursuant to 31 U.S.C. Section 3720 in the amount of $375.00 per month to pay this federally-insured student loan debt.

The Sturtevants are aware they are eligible for consolidation of their federally-insured student loans under the Ford program. The Ford loan consolidation program would allow the Sturtevants to make monthly payments of $110.00 per month to repay their loans, with $21.00 going towards the Debtor's student loan debt and $89.00 toward her husband's student loan debt. Debtor has rejected this loan consolidation option on the basis her family cannot afford the $110.00 monthly payments.

Debtor claims in the almost eleven years since graduation, she made student loan payments when financially able and took advantage of deferment, forbearance, and consolidation when she could not make payments. Debtor made six payments (totaling $246.72) on her student loan debt. She contends she cannot repay the loans and maintain a minimal standard of living for her family.

---

[2] Rick Sturtevant may change jobs. He attended truck driving school, has held a real estate license, and worked in the real estate business.

4

Debtor's financial and family circumstances do not establish undue hardship, as required by the law to obtain discharge of educational loan debt. The Sturtevant family lives at more than twice the poverty level; their income and expenses indicate the family could maintain more than a minimal standard of living even if Debtor repaid her educational loan indebtedness. Debtor has not established additional circumstances exist such that she and her dependents would continue to be unable to maintain a minimal standard of living for a significant portion of the repayment period of the student loans. Debtor holds a college degree and has been licensed as a real estate agent. She has no disability that prevents her for working and is not a caregiver to a disabled dependent. Her inability to find employment is not a permanent circumstance beyond her control. Debtor's payment history and rejection of the Ford loan consolidation option do not demonstrate she has made good faith efforts to repay her student loans.

Debtor has not sustained her burden. The student loan indebtedness is nondischargeable pursuant to Section 523(a)(8) of the Bankruptcy Code. Judgment is due to be entered in favor of ECMC and against Debtor.

## **CONCLUSIONS OF LAW**

### *11 U.S.C. § 523(a)(8)*

Section 523(a)(8) of the Bankruptcy Code "provides that student loans generally are not to be discharged. A narrow exception is made, however, where 'excepting such debt from discharge . . . will impose an undue hardship on the debtor and the debtor's dependents.'" Education Credit Management Corp., v. Mosley, 494 F.3d 1320, 1324 (2007) (quoting 11 U.S.C. Section 523(a)(8)).

"Undue hardship" is a mixed question of fact and law. Id. at 1324 (citation omitted). The Bankruptcy Code does not define "undue hardship;" the Eleventh Circuit has adopted the standard set forth in Brunner v. New York State Higher Education Services Corp., 831 F.2d 395, 396 (2d Cir.1987). Mosley, 494 F.3d at 1324 (citing Hemar Ins. Corp. of Am. v. Cox, 338 F.3d 1238, 1241 (11th Cir. 2003)). The party seeking discharge of an educational loan debt carries the burden of proof. The debtor must demonstrate by a preponderance of the evidence:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [herself] and [her] dependents if forced to repay the loans;
>
> (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
> (3) that the debtor has made good faith efforts to repay the loans.

Mosley, 494 F.3d at 1324-25 (quoting Brunner, 831 F.2d at 396). The Brunner test "[r]equir[es] evidence not only of current inability to pay but also of additional, exceptional circumstances, strongly suggestive of continuing inability to repay over an extended period of time." Brunner, 831 F.2d at 396.

### *Analysis*

The Court is not unsympathetic to Debtor's difficult financial situation; but she failed to carry her burden to establish repayment of her student loan indebtedness would cause her and her dependents undue hardship. "[C]ongress, in enacting § 523(a)(8), set a high bar for a debtor seeking to discharge government-guaranteed educational loans." Educational Credit Management Corp., v. Frushour, 433 F.3d 393, 403 (4th Cir. 2005).

The Brunner requirements are "demanding," Brightful v. Pennsylvania Higher Educ. Assistance Agency, 267 F.3d 324, 328 (3d Cir. 2001); and the debtor has the burden of proving all three requirements by a preponderance of the evidence. Frushour, 433 F.3d at 400. Debtor did not establish any of the three Brunner factors by a preponderance of the evidence.

The Sturtevant family could maintain a minimal standard of living even if Debtor repaid her educational loans. The family currently lives at more than twice the federal poverty level for a family of three and has a surplus of monthly income over expenses ($242.83 per month more income than documented expenses; $646.40 per month surplus, accounting for pro rata tax refund). This surplus significantly exceeds the $110.00 monthly student loan payment Debtor would have if she and her husband consolidated their federally-insured loans through the available Ford loan consolidation program.

The evidence did not establish the second Brunner factor: additional circumstances indicate the debtor's inability to maintain a minimal standard of living is likely to persist for a significant portion of the repayment period of the student loans. Courts applying Section 523(a)(8) have found a debtor's "inability to pay must be 'likely to continue for a significant time,' such that there is a 'certainty of hopelessness' that the debtor will be able to repay the loans within the repayment period." Mosley, 494 F.3d at 1326 (quoting Cox 338 F.3d at 1242; Brightful, 267 F.3d at 328).

There is no likelihood an inability to maintain a minimal standard of living will persist for the Sturtevant family; the family is able to maintain a minimal standard of living even if Debtor repays the loans. It is not unlikely Debtor will be able to repay the loans in the future. Debtor is physically and mentally able to work; she does not have a

disability. She does not provide care for a disabled dependent. Debtor is college educated and has been licensed as a real estate agent. The remote location of her current residence may make finding employment and public transportation to a job difficult, but these are not insurmountable obstacles or permanent conditions outside Debtor's control. Debtor's son is eleven years old; he will not need her direct supervision in the home indefinitely. There is no "certainty of hopelessness" as to Debtor's ability to repay the loans into the future.

Debtor's scant repayment history paired with her rejection of the Ford loan consolidation option prevents this Court from finding Debtor established the third Brunner factor: good faith efforts to repay her student loans. Debtor made only six payments toward repayment of her student loan debt (totaling $246.72) over the almost eleven years since she graduated. She has not been living in a rural area with limited job opportunity the entire time. She resided in Cocoa, Florida, a coastal community with significant commerce, at the time she filed bankruptcy; and she was engaged in the real estate investment business for several years. The Court acknowledges there is no per se rule a debtor cannot show good faith where he or she has not enrolled in an income-contingent repayment program, see Mosley, 494 F.3d at 1327; but Debtor's rejection of the available loan consolidation certainly does not weigh in her favor, as it appears she has rejected a realistic and highly beneficial loan repayment option. Debtor did not carry her burden to demonstrate good faith effort to repay her loans.

Debtor has not established by a preponderance of the evidence her student loan indebtedness is dischargeable pursuant to Section 523(a)(8) of the Bankruptcy Code.

Any and all indebtedness owed by Debtor to ECMC is not dischargeable. Judgment is due to be entered in favor of ECMC and against Debtor.

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that Debtor's Motion to Appear Telephonically at the Final Evidentiary Hearing (Doc. No. 38) is **GRANTED**; and it is further

**ORDERED, ADJUDGED and DECREED** that the relief sought in Debtor's Complaint (Doc. No. 5) is hereby **DENIED**; and it is further

**ORDERED, ADJUDGED and DECREED** that the indebtedness owed to ECMC is **NONDISCHARGEABLE** pursuant to 11 U.S.C. Sections 523(a)(8).

A separate Judgment consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this 26th day of April, 2011.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge